## Case No. 5,915.

### HALE et al. v. STIMPSON et al.

[2 Fish. Pat. Cas. 565.] [1]

District Court, D. Massachusetts. Oct., 1865.

PATENTS—OLD DEVICES—NEW COMBINATION.

1. The patentee of a machine which consists merely of a combination of old parts can not prevent the use of any number of those parts less than the whole, nor of new and substantial improvements of those old parts themselves, but only his own combination of parts or known substitutes therefor.

[See Case No. 5,904.]

2. A patentee can not repudiate one of the parts of his machine after another inventor has taught him to dispense with it.

3. The machine patented to William N. Oakes, June 8, 1858, for cutting irregular forms, is not an infringement of the reissued patent granted to Hale and Goodman, February 10, 1863, for "improvements in shaping irregular surfaces in wood."

This was a bill in equity, filed to restrain the defendants [Charles N. Stimpson and others] from infringing letters patent [No. 4,120] for "improvements in shaping irregular surfaces in wood," granted to Warren Hale and Allen Goodman, July 22, 1845; extended July 22, 1859, and reissued to Warren Hale, Allen Goodman, Lorenzo Hale, and J. W. Goodman, assignees, February 10, 1863 [No. 1,400]. The defendants were using a machine constructed under a patent for an "improved machine for cutting irregular forms," granted to William N. Oakes, June 8, 1858. The claim of the original patent of Hale and Goodman was as follows: "We claim the method herein above described of copying or forming the longitudinal irregularities of piano legs, and other similar articles, on rough blocks of wood, by means of a carriage moving horizontally against the revolving cutter, and holding both the pattern and the rough block, the cutting tool being raised and depressed for depths of cut by rollers resting on the patterns, the whole method or modus operandi being substantially as herein above set forth." The claim of the reissued patent was as follows: "The combination of the carriage, the pattern or patterns, the tracing roller or rollers, the rotating cutting or planing cylinder, and the means for turning or holding the block of wood to be fashioned, as described, or the equivalents of them, or either of them; the said combination being so organized, substantially as described, that by its mode of operation the block of wood to be fashioned can be turned to present in succession each of its faces to the action of the cutter or planing cylinder, whose axis is at right angles or nearly so, with the axis of the block of wood, so as to cut the wood longitudinally, while, by a longitudinal movement, the block of wood is gradually cut or planed from one end to the other on each face in succession, and by another movement at

right angles thereto, or nearly so, the cutting action is caused to follow the irregular lines of the pattern, thereby producing a polygon of any desired number of sides, of any desired configuration, longitudinally, and with all its sides of similar form." The claim of William N. Oakes' patent was as follows: "The combination of two carriages, B, C, having a rectilinear motion at different speeds, with the elongated pattern, tracers, and cutter, for the purposes set forth; not intending to claim an elongated pattern as such, or combined with other machinery to cut irregular forms, but only its combination with two carriages having a rectilinear motion, at different speeds, in the manner described." The facts are sufficiently presented in these claims, and in the opinion of the court.

J. E. Maynadier and Causten Browne, for complainants.

Chauncey Smith and B. R. Curtis, for defendants.

LOWELL, District Judge. In July, 1845, two of the complainants, Warren Hale and Allen Goodman, both of Dana, in the county of Worcester, and state of Massachusetts, procured a patent for certain improvements in planing irregular forms of wood, such as piano legs and other similar articles; and in their specification they declared that their invention differed from the machines then in use for turning lasts, gunstocks, etc., in that those machines produce their effects by the revolution of a pattern which guides the cutting tool, and makes an article irregular in all directions, and left in a rough state when delivered from the machine; while in their machine the pattern does not revolve, and the articles produced are irregularly shaped longitudinally, but plane in a transverse direction, and the surfaces when cut are perfectly smooth and fitted for the application of veneers. The specification proceeds: "The main features of our machinery are, first, a rectangular carriage moving horizontally on rails, and holding the rough block firmly in the center, and having also a perfect pattern on each side of the carriage; and, secondly, a revolving planing cylinder, similar to those in common use, arranged in a vertical sliding frame, the motions of said frame being controlled or guided by the patterns aforenamed, as will be shown in the sequel." Then follows a full and accurate description of the machine, including the contrivance called the centers and index for holding and turning the blocks so as to present several surfaces in succession to the cutter at any desired distances apart. It now appears, and is admitted on both sides, that those parts of the patented machine which are referred to as distinguishing it from other turning machines were not new. At least two machines were in public use in Massachusetts some years before this patent was taken out, which contained the rotating planing cylin-

[1] [Reported by Samuel S. Fisher, Esq., and here reprinted by permission.]

der, the carriage and patterns, and the rollers, and so organized, substantially like the patented machine, so far as these main features are concerned, as to plane, smoothly, a block of wood having longitudinal irregularities. These were the "Hayward" machine for planing chair backs, and the "Springfield" machine for planing parts of gunstocks.

Comparing the plaintiffs' machine with that of Hayward, which it most resembles, it is found to differ in three particulars, all of which are especially adapted to fit the machine for planing piano legs and similar articles, which it is desirable to produce in forms having great irregularities and steep inclines on each face, and with several faces alike. These three points are:

1. The carriage containing the block to be planed is fed through under the cutter, by hand, by the aid of a rack and pinion, and crank wheel, instead of by power, because an intermittent movement was required.

2. The motions of the cutter are guided and aided by the operator, by means of another similar arrangement of rack, and pinion, and crank wheel, by which he keeps the rollers attached to the cutter frame constantly in contact with the pattern, pressing them down or easing them up as occasion may require.

3. The block is so fastened to the carriage by the index and centers, already referred to, that different faces may be presented in succession, at precisely equal distances, to the action of the cutter.

No one of these parts is new in itself, or is so alleged to be new by the plaintiffs. The business of manufacturing piano legs has been successfully carried on by machines constructed under this patent to the present time. The patent itself has changed hands several times, and nearly all the parties to this suit, on both sides, have been interested in it at one time or another. When it expired, its renewal for seven years more was obtained by the original patentees. Two suits were brought on the patent; the last, in 1855, against one Brooks, in the Southern district of New York; and it is alleged in the bill here, that Brooks, after the hearing, consented to a perpetual injunction, which was issued. This statement is literally true, but conveys an entirely false impression, because it suppresses the very material fact that the consideration for that perpetual injunction was a perpetual license to Brooks to use the machines; and the motive for that was, that Brooks had discovered, and produced in court, the Springfield machine, and the then plaintiffs were thereupon advised that they should probably lose their case, and thought best to settle it in a manner which in fact amounted to a defeat, instead of a victory, as the bill would have us infer. The patentees, one of whom was a plaintiff in that case, were well aware of the Hayward and Springfield machines long before the hearing

in that suit, though perhaps not for a year or so after the original patent was issued, and were not unprepared for its discovery by the opposite party.

In 1858, one William N. Oakes took out a patent for an improvement in machines of this kind, and it is the use of one of his machines by the defendants which is here complained of.

The Oakes machine is substantially like that of the plaintiffs, excepting in the mode in which the rollers and pattern co-operate. Oakes makes his pattern larger in a certain definite proportion than the outline which he wishes to cut, and, by the use of a compound carriage, this pattern moves faster in a similar definite proportion than the block to be cut; the effect of which is, that the rollers do not need the aid of the operator in moving over these elongated curves, and the cutter frame being made sufficiently heavy to keep the rollers in place downward, the contrivance of the rack, and pinion, and crank wheel, for raising and lowering the cutters, which we have mentioned as the second of the alterations made by the plaintiffs in the Hayward machine, is dispensed with, and the machine is made, in this part, automatic.

In 1863, the plaintiffs surrendered their patent and obtained a reissue, and in their amended specification describe the machine and invention in most respects as before, but make fuller mention of the index, and lay more stress upon its use; and their claim is quite different, being for a combination of certain elements, none of which are in this part of the specification spoken of as new in themselves. And the questions here are upon the validity and construction of this reissue patent, and its infringement by the Oakes machine. It is conceded that the patent is for a combination of old parts, and that the patentee of a machine which consists merely of such a combination can not prevent the use of any number of those parts less than the whole, nor of new and substantial improvements of those old parts themselves, but only his own combination of parts or known substitutes therefor. The following cases are to these points: Prouty v. Ruggles, 16 Pet. [41 U. S.] 336; Carver v. Hyde, Id. 513; Brooks v. Fiske, 15 How. [56 U. S.] 219; McCormick v. Talcott, 20 How. [61 U. S.] 402; Vance v. Campbell, 1 Black. [66 U. S.] 429; Eames v. Godfrey, 1 Wall. [68 U. S.] 79; Burr v. Duryee, 1 Wall. [68 U. S.] 531.

It is further conceded that the invention of Oakes is new and ingenious, and probably useful, and that it is mechanically a different contrivance for raising and lowering the cutter frame from that used by the plaintiffs. But the plaintiffs say that the particular device for raising and lowering the cutters is no essential part of their invention; that their combination consists of only five elements: the carriage, the pattern, the rollers, the planing cylinder, and the index. Perhaps the plaintiffs' claim in their reissue pat-

ent is capable of this construction; but this reissue was obtained avowedly for the purpose of stopping the use of the Oakes machine, while avoiding to claim the Hayward and Springfield machines, and the claim, if construed as the plaintiffs now contend it should be, is very ingeniously adapted to this end. It is our duty, however, to construe the patent in such a way, if possible, as to conform to the actual invention. Now, the plaintiffs' invention was a machine of which we are unable to see that any of the parts are unimportant. It differed from one of these, confessedly anterior, in the three particulars which we have mentioned; all of which were adapted to fit the machine for making piano legs. And especially is this true of the device in question. It is essential to the proper working of all these machines, and is so described in the plaintiffs' specification, that the rollers should be kept in contact with the pattern; and the only mechanical difficulty to be overcome in adapting the machine to this particular use seems to have arisen from the steepness of the curves, which requires something beyond mere weight in the frame to insure this contact. The plaintiffs' contrivance to this end was one which needed, for its working, the constant attention of the operator, and the use of one of his hands. And we think it must be considered, in fact and in law, an important part of the plaintiff's invention. Two of the cases above cited are important authorities to show that a patentee can not repudiate one of the parts of his machine after another inventor has taught him how to dispense with it. Prouty v. Ruggles, 16 Pet. [41 U. S.] 336; Vance v. Campbell, 1 Black. [66 U. S.] 428.

It was urged by the defendants, that upon the uncontradicted evidence of the general and familiar use of the index in various machines, where it performed the same function in the same way as in the plaintiffs' machine, and it not appearing that any invention was or could be required to adapt it to this machine, it followed, as matter of law, that a patent could not be taken out for the mere application or special use of this contrivance under such circumstances.

As we have considered the patent to be for a machine made up of old parts, of which the index is only one, and of which one of the others is dispensed with by the defendants, it has not become necessary to pass upon this point; nor upon the point that the elongated pattern of the Oakes machine is not the "perfect pattern" of the reissue patent, nor any colorable evasion of it, nor a known substitute for it, but a new and substantial alteration, adopted for the honest purpose of enabling the pattern to perform two functions; or, in other words, that the Oakes invention may well be described as an improvement in the pattern itself. This appears to be Oakes' view of it, as set forth in his specification. But we have not found it necessary to pass

upon this; nor upon the existence and date of several of the alleged prior inventions; nor upon the question, which perhaps might be worthy of argument, whether the patentees, in their reissue, have properly distinguished between the new and the old as fully and clearly as is required by law.

Our decree ·must be that the bill be dismissed.